UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARGARITA MORALES,

    Plaintiff,

  v.

GOODWILL INDUSTRIES OF
SOUTHEASTERN WISCONSIN, INC.,

    Defendant.

No. 14 CV 2370

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Defendant employed plaintiff as a food service worker for over seven years. Because plaintiff suffered from permanent hearing loss, she regularly wore a hearing aid at work. Plaintiff also had a standing request with her employer that she not be assigned to the hot parts of the kitchen. According to plaintiff, working in hot conditions made her sweat, and sweating caused her device to malfunction.

One day, after years of accommodation, plaintiff was assigned to work in the hot food station. When she asked for a reassignment, supervisors refused her request. And when plaintiff refused to do the assignment, she was fired.

Plaintiff has filed a two-count complaint alleging defendant both failed to reasonably accommodate her and discriminated against her, all in violation of the Americans with Disabilities Act. Defendant now moves to dismiss the complaint for failure to state a claim. For the following reasons, defendant's motion is denied.

**I.       Legal Standard**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Where the complaint provides a basis for arguing that the claims are barred by *res judicata* or a failure to exhaust administrative remedies, a defendant may move under Rule 12(b)(6) to dismiss the complaint on these bases. *See Muhammad v. Oliver*, 547 F.3 874, 878 (7th Cir. 2008); *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013). In reviewing the sufficiency of a complaint, I accept all well-pleaded facts as true. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013).

In considering a motion to dismiss, I may take judicial notice of public court documents and other matters of public record. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991). This includes records of the Illinois Department of Human Rights. *See, e.g.*, *Ocampo v. Remedial Environmental Manpower, Inc.*, 2014 WL 2893190, *5 (N.D. Ill. June 26, 2014) (taking judicial notice of a voluntary withdrawal request form and an order of closure); *Anderson v. Centers for New Horizons, Inc.*, 891 F.Supp.2d 956, 959-60 (N.D. Ill. 2012) (taking judicial notice of a right-to-sue letter); *see also McGee v. United Parcel Service, Inc.*, 2002 WL 449061, *2 (N.D. Ill. Mar. 22, 2002) ("the court may take judicial notice of matters of public record, including records of administrative bodies such as the IDHR").

In deciding this motion, I take judicial notice of certain public records submitted by the parties, including the IDHR Notice of Substantial Evidence (Dkt. 10-1 at 8), the Complaint of Civil Rights Violations before the Illinois Human Rights Commission (Dkt. 10-1 at 16-21), the Final Order and Decision of the Illinois Human Rights Commission (Dkt. 10-1 at 23-24), the transcript of the April 17, 2007 debate of the Illinois House of Representatives (Dkt. 10-1 at 36-43), and the IDHR Investigation Report (Dkt. 13-1 at 2-12).

## II.  Background

Plaintiff Margarita Morales suffers from permanent hearing loss, for which she regularly wears a hearing aid. Dkt. 7 ¶ 11. Plaintiff's hearing aid malfunctions, however, when it is exposed to moisture. *Id*. ¶ 13. Thus, for her device to function, plaintiff must avoid activities that make her perspire, such as working in hot conditions. *Id*. ¶¶ 13-15.

In 2003, defendant Goodwill Industries of Southeastern Wisconsin began to employ plaintiff as a food service worker. Dkt. 7 ¶¶ 5-6. Because of her condition, plaintiff had a standing request with defendant not to work in significant heat. *Id*. ¶ 14. Plaintiff substantiated her request with documents from her doctor. *Id*. ¶ 15.[1]

On May 25, 2011, plaintiff was assigned to work in the hot food area. *Id*. ¶¶ 19-20. According to plaintiff, the hot food area was considerably warmer than the other available work stations and inconsistent with plaintiff's standing request for a reasonable accommodation. *Id*. Plaintiff asked her immediate supervisor to

---

[1] Plaintiff also needed to avoid the heat because it aggravated her asthma. *Id*. ¶¶ 16-18.

3

reassign her to the salad bar, but he said he could not and told her to take it up with the food service manager—Roxanne Ferrell. *Id.* ¶¶ 21-22.

Plaintiff spoke with Ferrell. *Id.* ¶ 23. She reminded her of her accommodation and asked to work the salad bar instead of the hot food area. *Id.* Plaintiff also asked Ferrell to review the medical records and doctor's notes that substantiated her request. *Id.* ¶ 24. Ferrell refused. *Id.* ¶ 25. She said plaintiff should be able to work in every part of the kitchen, and that plaintiff had to either do the job or go home. *Id.* ¶¶ 25-26. Yolanda Winningham, a "human resources generalist," entered Ferrell's office as the two spoke. *Id.* ¶ 27. After Ferrell explained the situation, Winningham confirmed that plaintiff would be sent home unless she worked the hot food station. *Id.* ¶ 28.

Plaintiff was unwilling to expose herself to the hot food station, so Ferrell and Winningham terminated her employment. *Id.* ¶¶ 29-30. On November 21, 2011, plaintiff, acting *pro se*, filed a Charge of Discrimination with the Illinois Department of Human Rights against "Goodwill Industries International" as respondent. Dkt. 7-1 at 4. Plaintiff claimed her charge of discrimination was based on "Disability" and she described the particulars as follows:

    I.    A.    ISSUE/BASIS
                    DISCHARGE – MARCH 25, 2011,[2] DUE TO MY
                    PHYSCIAL DISABILITY, HEARING IMPAIRMENT

        B.    PRIMA FACIE ALLEGATIONS

---

[2] Plaintiff later filed a technical amendment to correctly state her date of discharge as May 25, 2011. Dkt. 1-1 at 3.

4

> 1. I am an individual with a disability within the meaning of Section 1-103 (I) of the Illinois Human Rights Act.
>
> 2. Respondent was aware of my disability.
>
> 3. My work performance as food salad prep worker met Respondents [sic] expectations.
>
> 4. On March 25, 2011, Respondent discharged me for poor work performance.
>
> 5. My disability is unrelated to my ability to perform the essential functions of my job duties with or without a reasonable accommodation.

Dkt. 1-1 at 4-5. Plaintiff's charge contained two more claims of discrimination, identical to the one above but premised on the disabilities of "asthma disorder" and "high blood pressure disorder." *Id.* at 5.

The Department found "substantial evidence" supporting plaintiff's first two charges, but closed the case as to plaintiff's high blood pressure claim. Dkt. 13-1 at 2. Plaintiff received notice of these findings and asked the Department to file, on her behalf, a Complaint of Civil Rights Violations with the Illinois Human Rights Commission. Dkt. 10-1 at 8, 17. The Department filed the complaint, but after plaintiff subsequently obtained counsel, she moved to voluntarily dismiss the administrative case. Dkt. 10-1 at 23-24. The administrative law judge granted the motion on March 27, 2014 and dismissed the case with prejudice. *Id.*

On April 2, 2014, plaintiff filed the present action in the United States District Court for the Northern District of Illinois. Dkt. 1. Plaintiff's two-count amended complaint alleges that defendant violated the Americans with Disabilities Act (42 U.S.C. § 12111 *et seq.*) by (1) failing to reasonably accommodate her need to

avoid the heat, and (2) terminating her employment for not being able to endure the heat (i.e., discharging her on the basis of her disability). *See* Dkt. 7. Defendant moves to dismiss both counts. Dkt. 9.

## III. Analysis

### A. Failure to Accommodate (Count I)

Defendant argues that plaintiff's failure to accommodate claim should be dismissed because it was not included in her administrative agency charge.[3] Dkt. 10 at 3. "Generally, a plaintiff may not bring claims under [the ADA] that were not originally included in the charges made to the EEOC." *Sitar v. Indiana Department of Transportation*, 344 F.3d 720, 726 (7th Cir. 2003); *Green v. National Steel Corp., Midwest Division*, 197 F.3d 894, 898 (7th Cir. 1999). This rule "gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

Nevertheless, "if certain claims are not included in an EEOC charge, a plaintiff can still bring them if they are 'like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations.'" *Moore v. Vital Products, Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011) (quoting *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*)). Thus, a plaintiff seeking to bring "a discrimination claim in a federal district court

---

[3] Plaintiff's charge was made to both the Illinois Department of Human Rights and the Equal Employment Opportunity Commission. *See* Dkt. 7 ¶ 4; Dkt. 7-1 at 2-5; Dkt. 13-1 at 2. Because the case law tends to speak in terms of EEOC charges, I refer to that agency for simplicity.

6

complaint that was not brought in the charges filed with the EEOC . . . must [demonstrate]: (1) the claim is like or reasonably related to the EEOC charges, and (2) the claim in the complaint reasonably could develop from the EEOC investigation into the original charges." *Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995). A federal complaint and EEOC charge "are not alike or reasonably related unless there is a factual relationship between them . . . [meaning] at minimum, [they] describe the *same conduct* and implicate the *same individuals*." *Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis in original). Whether the complaint reasonably could develop from the EEOC investigation into the original charges "requires speculation as to what the EEOC might or might not discover in the course of an investigation." *Id.* at 500.

Plaintiff all but concedes that her failure to accommodate claim was not in the EEOC charge. Dkt. 13 at 2-5. Nonetheless, plaintiff believes the claim should survive because it is reasonably related to the allegations of the EEOC charge (discriminatory discharge) and because an investigation into the former could reasonably be expected to grow out of an investigation into the latter. *Id.* Defendant disagrees and argues that a failure to accommodate claim is not reasonably related to a discriminatory discharge claim, and that an investigation into the one cannot be expected to grow out of an investigation into the other. Dkt. 10 at 3-4 (citing *Green v. National Steel Corp., Midwest Division*, 197 F.3d 894, 898 (7th Cir. 1999)).

In *Green*, the plaintiff filed a charge with the EEOC alleging only that she was terminated on the basis of disability. *Id.* at 897. But when she filed suit, she

7

claimed her former employer also failed to accommodate her. *Id*. The plaintiff's discrimination claim was based on her termination, while her failure to accommodate claim was based on the employer not giving her a suitable desk chair, appropriate lighting, or handicapped parking. *Id*. at 898.

The Seventh Circuit affirmed the grant of summary judgment in favor of the employer:

> As we have stated previously, a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA. In fact, the two types of claims are analyzed differently under the law. Therefore, they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability. For whatever reason, Green neglected to make a "failure to accommodate" argument in her EEOC charge, and we fail to understand how she could expect that her claim that she suffered from inadequate working conditions would develop from the investigation of the reasons for her discharge. [Plaintiff's failure to accommodate claim] has nothing to do with her complaint that she was wrongfully terminated.

*Id*. (citations omitted).

Defendant takes *Green* to mean "that the separate and distinct legal framework and analysis required for a failure to accommodate claim as compared to a disparate treatment claim *negates the possibility* that one is reasonably related to the other or could grow out of an agency investigation." Dkt. 16 at 2-3 (emphasis added). In other words, defendant reads *Green* to mean that a discrimination charge is *per se* incapable of supporting an accommodation claim—no matter the facts.

I do not read *Green* so broadly. Instead, I join those courts who view *Green*'s holding as turning on the facts before it, specifically that the circumstances underlying the failure to accommodate claim (issues involving office furniture and

8

the like) "ha[d] nothing to do with" the circumstances underlying the discrimination claim (the plaintiff's termination). *See Ortiz v. Board of Education of the City of Chicago*, 2013 WL 3353918, *5 (N.D. Ill. July 2, 2013); *Wamack v. Windsor Park Manor*, 836 F.Supp.2d 793, 798 (N.D. Ill. 2011); *Davis v. American Drug Stores, Inc.*, 2003 WL 21149063, *3 (N.D. Ill. May 19, 2003). These cases, as well as the case at bar, differ materially from *Green* because in each one, the conduct underlying the discrimination claim did "ha[ve] [some]thing to do with" the conduct underlying the accommodation claim. In each case, it was the defendant's alleged failure to accommodate that actually caused the plaintiff to be terminated.

Here, plaintiff claims defendant failed to accommodate her by "refus[ing] to reassign [her] to an area other than the hot food area." Dkt. 7 ¶ 25. And plaintiff claims defendant discriminated against her by "demand[ing] that [she] either work on the hot food line or go home for the day" and then terminating her when she chose to go home. *Id*. ¶¶ 29-30, 44. Thus, the accommodation claim and the discrimination charge involve the same conduct and individuals, and it would not be unreasonable to think an investigation into plaintiff's termination would grow into an investigation into defendant's failure to accommodate.[4] Count I survives.

---

[4] Plaintiff and defendant debate whether an investigation into the alleged failure to accommodate *in fact* grew out of the investigation into the discrimination. Dkt. 13 at 5; Dkt. 16 at 5-6. That question is beside the point, however, because the relevant inquiry is whether "the claim in the complaint reasonably *could* develop from the EEOC investigation into the original charges." *Harper*, 45 F.3d at 148 (emphasis added); *see also Rush*, 966 F.2d at 1112 ("the appropriate standard for measuring exhaustion is not those charges that the EEOC in fact considered, but those that were brought to its attention").

9

### B. Discriminatory Discharge (Count II)

Defendant offers two reasons why plaintiff's discrimination claim should be dismissed. First, defendant argues the claim is barred by the Illinois Human Rights Act, under which a complainant has the right to adjudicate her claim of discrimination before the Illinois Human Rights Commission or an Illinois circuit court, but not both. 775 ILCS 5/7A-102(D)(3)-(4). A complainant whose discrimination charge is found to lack substantial evidence and who chooses to adjudicate the claim before the Commission, "may not later commence a civil action in a circuit court." *Id.* § 7A-102(D)(3). Whether the Illinois statute bars a civil action in circuit court for a claimant whose discrimination charge is found to be supported by substantial evidence and who chooses to adjudicate the claim before the Commission is a different question, one that I do not reach because I find that Illinois law does not control whether plaintiff can maintain the federal discrimination claim she brought in federal court.

Defendant cites *Aberman v. Board of Education of the City of Chicago*, 2013 WL 5290048 (N.D. Ill. Sept. 17, 2003), for the proposition that a plaintiff cannot proceed in federal court after pursuing a charge before the Commission. In *Aberman*, the plaintiff filed state and federal discrimination claims in the Circuit Court of Cook County, including ADA claims for disability discrimination and failure to accommodate, after a lack of substantial evidence finding by the Commission. *Id.* at *1. The defendant removed the case to federal court, and the district court dismissed the ADA claims. *Id.* The court reasoned:

> Defendants maintain that because Aberman has elected to proceed before the IHRC, she could not commence an action in the Circuit Court of Cook County (which since has been removed to this court). . . . The statute in question clearly states that "[i]f the complainant chooses to file a request for review with the Commission, he or *she may not later commence a civil action in a circuit court.*" . . . Therefore, all of Plaintiff's claims which are premised on the same allegations of disability and age discrimination . . . will be dismissed in this court, to be resolved by the Commission and perhaps the state appellate courts.

*Id*. at *2, *4. (emphasis in original, internal citations omitted).

In *Aberman*, the plaintiff "commenced" her action in the Circuit Court of Cook County, clearly running afoul of section 7A-102(D)(3). In this case, by contrast, plaintiff did not "commence a civil action in a circuit court"—she began hers in this federal district court.[5] I do not read the Illinois statute to limit a federal court's original jurisdiction over federal discrimination claims. *Cf. Marshall v. Marshall*, 547 U.S. 293, 314 (2006) (federal court jurisdiction cannot be impaired by subsequent state legislation)*; General Casualty Co. v. Commonwealth of Penn. ex rel. Schnader*, 294 U.S. 189, 197 (1935) ("The jurisdiction conferred on the District Courts by the Constitution and laws of the United States cannot be affected by state legislation."); *see also BNSF Railway Co. v. O'Dea*, 572 F.3d 785, 788-89 (9th Cir. 2009). Accordingly, *Aberman* does not apply. Defendant offers no other reason why the Illinois Human Rights Act would control this case. I conclude it does not.

The second argument defendant offers for dismissing Count II is that the claim is barred by the doctrine of *res judicata* (or, claim preclusion) because the Illinois Human Rights Commission already dismissed it with prejudice. Dkt. 10 at

---

[5] The *Aberman* court did not discuss whether the outcome would have been different had the plaintiff originally commenced the civil action in the district court.

11

8-12. This argument fails, however, because unreviewed decisions by state agencies are not entitled to preclusive effect as to ADA claims brought in federal court.

Under the federal common law, federal courts must generally give preclusive effect to state administrative findings. *See University of Tennessee v. Elliot*, 478 U.S. 788, 797-99 (1986). The *Elliot* court held, however, that the federal common-law rule of preclusion was inconsistent with Title VII of the Civil Rights Act of 1964, and so it did not apply to claims arising thereunder. *Id.* at 796 (relying on *Kremer v. Chemical Construction Corp.*, 456 U.S. 461 (1982)). "[T]he logic of *Kremer* and *Elliot* applies equally to other federal anti-discrimination statutes." *Staats v. County of Sawyer*, 220 F.3d 511, 514 (7th Cir. 2000). And every court of appeals to consider the issue has held that *Elliot* applies equally to the ADA. *See Smith v. Perkins Board of Education*, 708 F.3d 821, 827 (6th Cir. 2013); *Joseph v. Athanasopoulos*, 648 F.3d 58, 64 n. 6 (2d Cir. 2011); *Stone v. Department of Aviation*, 290 Fed. Appx. 117, 123 n. 3 (10th Cir. 2008); *Medeiros v. City of San Jose*, 188 F.3d 514, 1999 WL 613405, at *1 (9th Cir. 1999); *Thomas v. Contoocook Valley School District*, 150 F.3d 31, 39 n. 5 (1st Cir. 1998). Thus I apply *Elliot* to plaintiff's ADA claims.

Defendant cites cases that rely on traditional principles of claim preclusion, but those cases do not undermine the distinction made in *Elliot* between such principles and the specific circumstances of the federal anti-discrimination statutes. The decision of a state agency (i.e., the decision of a limited-jurisdiction forum) can result in claim preclusion if the plaintiff has forgone an opportunity to bring the precluded claim before a forum of general jurisdiction (e.g., a state circuit court). *See*

*Waid v. Merrill Area Public School*, 91 F.3d 857 (7th Cir. 1996); *Humphrey v. Tharaldson Enterprises, Inc.*, 95 F.3d 624 (7th Cir. 1996). But that is an application of the federal common-law rule of preclusion, and under *Elliot*, that rule does not apply to the ADA. Similarly, *Dookeran*, also cited by defendant, simply holds that failing to bring a Title VII claim in a state-court action in which it could have been brought, can lead to claim preclusion. *Dookeran v. County of Cook*, 719 F.3d 570, 578 (7th Cir. 2013). That is not the issue here.[6]

Unreviewed decisions by state agencies are not entitled to preclusive effect as to ADA claims brought in federal court. Because defendant's cited authorities do not persuade me otherwise, Count II survives as well.

## IV. Conclusion

Defendant's motion to dismiss, Dkt. 9, is denied.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 9/30/14

---

[6] Defendant also cites to *Eyiowuawi v. Stroger's Hospital of Cook County*, 2014 WL 380891 (N.D. Ill. Feb. 3, 2014). *Eyiowuawi* is inapposite, however, because it arose before January 1, 2008—the date a plaintiff became able to file a complaint alleging violations of the Illinois Human Rights Act directly in state circuit court.